# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REYNOLDS INNOVATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:11-CV-581 |
| | ) | |
| | ) | |
| E-CIGARETTTEDIRECT, LLC d/b/a | ) | |
| "E-CIGARETTEDIRECT.COM"; | ) | |
| VEPPO, INC. d/b/a "E- | ) | |
| CIGARETTEDIRECT" and | ) | |
| "VEPPOCIG.COM"; SABINA KING, | ) | |
| individually and d/b/a "E- | ) | |
| CIGARETTEDIRECT.COM" and | ) | |
| "VEPPOCIG.COM"; and MICHAEL | ) | |
| KEITH KING, individually and d/b/a "E- | ) | |
| CIGARETTEDIRECT.COM" and | ) | |
| "VEPPOCIG.COM", | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

Plaintiff Reynolds Innovations, Inc. ("RII") states the following for its Complaint

against Defendants E-CigaretteDirect, LLC d/b/a "E-CigaretteDirect.com"; Veppo, Inc.

d/b/a "E-CigaretteDirect" and "VeppoCig.com"; Sabina King, individually and d/b/a "E-

CigaretteDirect.com" and "VeppoCig.com"; and Michael Keith King, individually and

d/b/a "E-CigaretteDirect.com" and "VeppoCig.com" (collectively "Defendants"):

1

## NATURE OF THE ACTION

1.      This is an action at law and in equity for trademark infringement, unfair competition and false designation of origin, and trademark dilution arising under sections 32 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125; unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*; and trademark infringement and unfair competition arising under the common law of the State of North Carolina.

2.      As more fully described below, without RII's authorization, Defendants have used and continue to use trademarks that are colorable imitations of, and are confusingly similar to, RII's famous and federally-registered CAMEL trademarks in connection with the sale of Defendants' liquid nicotine products via the Internet.  On information and belief, Defendants have been and continue to be engaged in the business of operating Internet websites, including those displayed at <www.e-cigarettedirect.com> ("E-Cigarette Website") and <www.veppocig.com> ("Veppo Website") (collectively, "Defendants' Websites"), through which Defendants actively promote and sell, among other items, flavored liquid nicotine products for use with electronic cigarettes.

3.      On information and belief, without RII's authorization, Defendants have used RII's famous and federally-registered CAMEL trademarks, or colorable imitations thereof, in the advertising and sale of a liquid nicotine product that Defendants claim has a "Camel like" flavor, examples of which are shown below:

2

# E liquid Nicotine Camel like Flavor



RRP: ~~$34.99~~

Your Price: $28.99
(You save $6.00)

Brand: VEPPO

Rating: ★★★★☆ ( 3 product reviews )

Availability: Usually ships in 24 hours
* Nicotine Strength:

-- Please Choose an Option --

Quantity: 1

Add to Cart 🛒

Buy in bulk and save

Like    Sign Up to see what your friends like.

SHARE

## Product Description

Camel is one of the leading tobacco manufacturers that is world-famous for its premium cigarettes of distinguished "Camel" taste. The secret of Camel's distinctive flavor and taste lies in Turkish tobacco that is considered to be the smoothest and aromatic in the world. Camel cigarettes were created to provide you with unforgettable smoking pleasure.

Our Camel like flavored E-liquid was designed to simulate the smooth camel cigarette taste, but without all the tar, toxins and carcinogens. Only for electronic cigarette users. The Camel like E-Liquid is full-flavored, giving you a strong and delicious e-smoke that will definitely make you satisfied. If you enjoy smoking Camel cigarettes, then you'll love the Camel-like flavored E-liquid Nicotine. Also available is a pure Turkish Tobacco E-liquid.

3



# E liquid Nicotine Camel like Flavor

|  |  |
|---|---|
| RRP: | ~~$34.99~~ |
| Your Price: | **$28.99** |
|  | (You save $6.00) |
| Availability: | Usually ships in 24 hours |

* Nicotine Strength:
-- Please Choose an Option --

Quantity: 1  **> ADD TO CART**

SHARE

## Product Description

**Camel** is one of the leading tobacco manufacturers that is world-famous for its premium cigarettes of distinguished "Camel" taste. The secret of Camel's distinctive flavor and taste lies in Turkish tobacco that is considered to be the smoothest and aromatic in the world. **Camel cigarettes** were created to provide you with unforgettable smoking pleasure.

Our **Camel like flavored E-liquid** was designed to simulate the smooth camel cigarette taste, but without all the tar, toxins and carcinogens. Only for electronic cigarette users. The Camel like E-Liquid is full-flavored, giving you a strong and delicious e-smoke that will definitely make you satisfied. If you enjoy smoking Camel cigarettes, then you'll love the **Camel-like flavored E-liquid Nicotine**. Also available is a pure Turkish Tobacco E-liquid.

4.      In addition to using RII's trademarks in their promotional materials,

Defendants' actual products also bear the famous CAMEL trademark and the phrase "A

healthier alternative," as shown below:

4

 

5.    RII has not authorized or permitted Defendants to use its famous CAMEL

trademarks, or colorable imitations thereof, in connection with Defendants' products.

Unless enjoined by this Court, Defendants' conduct will continue to result in a likelihood

of consumer confusion and irreparable injury to RII.

**PARTIES, JURISDICTION AND VENUE**

6.    RII is a corporation organized and existing under the laws of the State of

North Carolina, with its principal place of business at 401 North Main Street, Winston-

Salem, North Carolina.  RII is a trademark holding company and a subsidiary of R.J.

Reynolds Tobacco Company.  RII is therefore the record owner, in its own right or by

assignment from its predecessors-in-interest, of the CAMEL trademarks that are at issue

in this dispute, including the federal trademark registrations that are identified below.

5

For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII, RII's predecessors-in-interest and/or RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

7. On information and belief, Defendant E-CigaretteDirect, LLC ("E-CigaretteDirect") is a limited liability company organized under the laws of the State of Colorado with an address at 18695 Pony Express Drive, Suite #2741, Parker, Colorado 80134.

8. On information and belief, Defendant Veppo, Inc. ("Veppo") is a corporation organized under the laws of the State of Colorado with an address at 18695 Pony Express Drive, Suite #2741, Parker, Colorado 80134.

9. On information and belief, Defendant Sabina King ("Sabina King") is a resident of Colorado with an address in Parker, Colorado. On further information and belief, Sabina King is an owner and operator of E-CigaretteDirect and Veppo, and, together with Defendant Keith King, directs and controls the business activities of E-CigaretteDirect and Veppo, including but not limited to the ownership and operation of Defendants' Websites.

10. On information and belief, Defendant Michael Keith King ("Keith King") is a resident of Colorado with an address in Parker, Colorado. On further information and belief, Keith King is an owner and operator of E-CigaretteDirect and Veppo, and, together with Sabina King, directs and controls the business activities of E-

CigaretteDirect and Veppo, including but not limited to the ownership and operation of Defendants' Websites.

11.     This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Defendants because the infringing products that Defendants offer and make available to purchasers at Defendants' Websites are capable of being ordered, and have been ordered, by purchasers in North Carolina and within this judicial district, and are capable of being shipped, and have been shipped, to purchasers in North Carolina and within this judicial district.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

14.     This Court has jurisdiction to enter injunctive relief, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

16.     At all times material hereto, Reynolds has been, and currently is still, engaged in the business of manufacturing, distributing, marketing, advertising, offering

7

for sale, and selling various types of tobacco products throughout the United States under

multiple trademarks owned by RII and under authority from RII. As more fully

described below, RII's famous CAMEL trademarks are registered on the Principal

Register of the United States Patent and Trademark Office ("USPTO") and are used in

connection with the sale of cigarettes, among other things.

<u>CAMEL Marks</u>

17.     Beginning at least as early as 1901, Reynolds adopted and began using the

distinctive designation CAMEL in interstate commerce for the purpose of identifying and

distinguishing Reynolds's tobacco products from the products of other manufacturers and

distributors of tobacco. Reynolds has advertised, marketed, distributed, offered for sale,

and sold its products under the CAMEL Marks continuously for more than a century.

18.     On September 30, 1919, RII's predecessor-in-interest was granted U.S.

Trademark Registration No. 126,760 for the trademark CAMEL, in stylized form as

shown below, on the USPTO's Principal Register for use in connection with "cigarettes"

(the "'760 Registration").

# CAMEL

The '760 Registration, which RII duly acquired by assignment from its predecessors-in-

interest, has become incontestable by virtue of long and continuous use and pursuant to

the provisions of 15 U.S.C. § 1065. The '760 Registration therefore constitutes

conclusive evidence of the validity of the mark shown therein and of the registration of

said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '760 Registration, together with USPTO assignment records reflecting RII's ownership of the '760 Registration, is attached hereto as Exhibit 1.

19.     On January 13, 1976, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,030,232 for the Camel Design trademark, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'232 Registration").



The '232 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '232 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '232 Registration, together with USPTO assignment records reflecting RII's ownership of the '232 Registration, is attached hereto as Exhibit 2.

20.    On April 29, 1986, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,391,824 for the trademark CAMEL & Design, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'824 Registration").



The '824 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '824 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '824 Registration, together with USPTO assignment records reflecting RII's ownership of the '824 Registration, is attached hereto as Exhibit 3.
 (The '760, '232 and '824 Registrations are referred to collectively hereinafter as the "CAMEL Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "CAMEL Marks".)

21.    RII owns, *inter alia*, the CAMEL Registrations, the CAMEL Marks and all the goodwill associated therewith in the United States.  The CAMEL Registrations

10

remain valid, subsisting, and uncancelled, and have become incontestable as described above.

22. The CAMEL Marks inherently serve to distinguish Reynolds's tobacco products from those of others. The CAMEL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the CAMEL Marks throughout the United States, consumers of tobacco products recognize the CAMEL Marks as symbols of the highest quality of tobacco products, and associate and identify the CAMEL Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

## Defendants' Unlawful Acts

23. On information and belief, Defendants have advertised and offered for sale products bearing the CAMEL Marks, or marks that are confusingly similar to the CAMEL Marks.

24. On information and belief, Defendants operate Defendants' Websites at <www.e-cigarettedirect.com> and <www.veppocig.com>. On Defendants' Websites, Defendants advertise and sell, among other things, liquid nicotine products. Excerpts from Defendants' Websites, as such contents existed as of July 18, 2011, are attached hereto as Exhibit 4.

25. On information and belief, Defendants have offered for sale, and continue to offer for sale, a product called "E liquid" through Defendants' Websites.

26.     On information and belief,  E liquid is a liquid nicotine product that is used in connection with electronic cigarettes.  Defendants' E liquid products are advertised or offered in several flavors and varieties, including a flavor identified with the name "Camel."  Defendants advertise and promote their Camel variety with emphasized uses of the famous CAMEL Marks, or colorable imitations thereof;  in association with depiction of camels; and with other references to Reynolds' famous CAMEL brand of cigarettes. For example, in the "Product Description" for Defendants' "Camel" E liquid, Defendants state the following:

> **Camel** is one of the leading tobacco manufacturers that is world-famous for its premium cigarettes of distinguished "Camel" taste. The secret of Camel's distinctive flavor and taste lies in Turkish tobacco that is considered to be the smoothest and aromatic in the world. **Camel cigarettes** were created to provide you with unforgettable smoking pleasure.  Our **Camel like flavored "E liquid"** was designed to simulate the smooth camel cigarette taste, but without all the tar, toxins and carcinogens.  Only for <u>electronic cigarette</u> users.  The Camel like "E liquid" is full-flavored, giving you a strong and delicious e-smoke that will definitely make you satisfied. If you enjoy smoking Camel cigarettes, then you'll love the **Camel-like flavored "E liquid" Nicotine**."  (emphasis in original).

27.     The depiction of a camel used by Defendants on the Veppo Website, shown below, is virtually identical to the Camel Design trademark shown in the '232 Registration and the '824 Registration.



28.     RII has not authorized, and does not authorize, Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the manufacture or sale of Defendants' E liquid products or any other products of Defendants.

29.     In addition to bearing certain of the famous CAMEL Marks, Defendants' "Camel" E liquid products also depict the phrase "A healthier alternative."  Defendants' use of this phrase, on products bearing the CAMEL Marks, may raise regulatory concerns for Defendants' products, which are not under RII's control and which RII has not authorized and does not authorize to be manufactured, advertised or sold.  Moreover, this phrase contains a statement regarding the health benefits of liquid nicotine that may be false or misleading, and consumers and governmental regulators may mistakenly attribute this statement to RII.

30.     Upon information and belief, Defendants have sold E liquid products bearing the CAMEL Marks, or marks confusingly similar to the CAMEL Marks, through Defendants' Websites to purchasers in North Carolina and within this judicial district.

### FIRST CLAIM FOR RELIEF
**(Infringement of Federally Registered Trademarks under 15 U.S.C. § 1114)**

31.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

32.     Defendants' unauthorized use of the CAMEL Marks and their sale of "Camel" E liquid products is likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products.  The consuming public is likely to believe that Defendants' "Camel" E liquid products are products

13

authorized by RII for sale under the CAMEL Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks, when such is not the case.

33. By their unauthorized sale of their "Camel" E liquid products, Defendants have infringed and continue to infringe the famous, registered, and incontestable CAMEL Marks, as shown in the CAMEL Registrations, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Defendants' unauthorized sale of their "Camel" E liquid products and their unauthorized use of the CAMEL Marks, or colorable imitations thereof, in connection with the sale of such products, as alleged above, was intentionally done with a view and purpose of trading on and benefiting from the substantial reputation and goodwill in the United States associated with the CAMEL Marks.

35. Defendants' acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition, Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

36. Defendants' trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

14

37.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their infringing use of the CAMEL Marks, or colorable imitations thereof, in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

38.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

### SECOND CLAIM FOR RELIEF
**(Federal Unfair Competition, False Representation, and
False Designation of Origin under 15 U.S.C. § 1125(a))**

39.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

40.     Defendants' unauthorized use of the CAMEL Marks, or colorable imitations thereof, in connection with the sale of their "Camel" E liquid products constitutes unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the source, origin, or sponsorship of Defendants' products.

41.     As a direct and proximate result of Defendants' unfair competition, false representation, and false designation of origin as herein alleged, RII has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to

15

its business, reputation, and customer goodwill. Defendants' unfair competition, false representation, and false designation of origin has caused and will continue to cause RII to lose sales to which it would otherwise be entitled, unless such unlawful conduct is enjoined by this Court.

42.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unauthorized use of the CAMEL Marks, or colorable imitations thereof, in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

43.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

## THIRD CLAIM FOR RELIEF
### (Dilution of Federally Registered Trademark under 15 U.S.C. § 1125(c))

44.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

45.     The CAMEL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods. The CAMEL Marks became famous long prior to Defendants' unlawful use of the CAMEL Marks, or colorable imitations thereof, as alleged herein.

46.     Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of their "Camel" E liquid

products is likely to dilute RII's famous CAMEL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous CAMEL Marks.

47.     Defendants' unauthorized use of the CAMEL Marks in connection with the sale in the United States of their "Camel" E liquid products is intended and has the effect of trading on Reynolds's reputation and causing dilution of the famous CAMEL Marks.

48.     Upon information and belief, Defendants do not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, any of the CAMEL Marks and cannot assert any rights in the CAMEL Marks that are prior to RII's first use, actual or constructive, of the CAMEL Marks.

49.     Defendants' trademark dilution as herein alleged has injured and will continue to injure RII in that RII has suffered and will continue to suffer damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct, unless such unlawful conduct is enjoined by this Court.  In addition, Defendants have been unjustly enriched by reason of their acts of trademark dilution in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

50.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unlawful use of the CAMEL Marks, or

colorable imitations thereof, in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

51.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

**FOURTH CLAIM FOR RELIEF**
**(Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1 *et seq.*)**

52.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

53.     Defendants' conduct as alleged above is in commerce and affects commerce in the State of North Carolina.

54.     Defendants' conduct as alleged above constitutes unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1 *et seq.*

55.     Defendants' unfair methods of competition and their unfair and deceptive trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition, Defendants have been unjustly enriched by reason of their unfair methods of competition and unfair and deceptive trade practices in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

56.     Defendants have willfully engaged in the acts and practices alleged above,

justifying an award of attorneys' fees to RII pursuant to N.C. Gen. Stat. § 75-16.1.

## FIFTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

57.     The allegations of the foregoing Paragraphs are repleaded and incorporated

by reference as if fully set forth herein.

58.     Defendants' conduct as alleged above constitutes trademark infringement

and unfair competition in violation of the common law of the State of North Carolina.

59.     Defendants' trademark infringement and unfair competition as alleged

above has injured RII in that RII has suffered damage to its reputation and customer

goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition,

Defendants have been unjustly enriched by reason of their trademark infringement and

unfair competition in that Defendants have achieved sales and profits, and the

opportunity to earn future sales and profits, as a direct and proximate result of their illegal

conduct.

60.     Unless enjoined by this Court, Defendants' trademark infringement and

unfair competition as herein alleged will continue to cause irreparable and inherently

unquantifiable injury and harm to RII's business, reputation, and goodwill.

61.     Defendants' wrongful conduct as above alleged was accompanied by

circumstances of willfulness and deliberate indifference to the rights of RII, warranting

the assessment of punitive damages.

19

**WHEREFORE**, RII prays the Court as follows:

1.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any and all further unauthorized promotion, marketing, advertising, sale, offering for sale, or distribution of products bearing the CAMEL Marks, or colorable imitations thereof, including without limitation Defendants' "Camel" E liquid products;

2.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any unauthorized sale, offering for sale, or distribution of products bearing any trademark owned by RII, or any colorable imitations thereof;

3.      That RII have and recover of Defendants such actual damages as RII may prove at trial;

4.      That Defendants account to RII for all of Defendants' profits derived as a direct and proximate result of Defendants' unlawful conduct;

5.      That such damages and/or profits to which RII is entitled by trebled pursuant to 15 U.S.C. § 1117 and N.C. Gen. Stat. § 75-16;

6.      That, in the alternative to treble damages and/or profits, RII have and recover punitive damages of Defendants;

7.      That the costs of this action, including a reasonable attorneys' fee, be taxed against Defendants; and

8.    That the Court grant RII such other and further relief as the Court may

deem just and proper.


This the 20th day of July, 2011.

/s/ William M. Bryner
William M. Bryner, N.C. State Bar No. 23022
Laura C. Miller, N.C. State Bar No. 34103
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-607-7300
Facsimile: 336-607-7500
wbryner@kilpatricktownsend.com
lamiller@kilpatrickstownsend.com

Attorneys for Plaintiff
Reynolds Innovations, Inc.